UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RAAFAT MOHAMMADKHANI,<br><br>           Plaintiff,<br><br>vs.<br><br>JAMES M. ANTHONY,<br><br>           Defendant.<br>_____<br><br>RAAFAT MOHAMMADKHANI,<br><br>           Plaintiff,<br><br>vs.<br><br>COUNTY OF CLARK, a political subdivision of the State of Nevada, dba UNIVERSITY MEDICAL CENTER,<br><br>           Defendants.<br>_____ | CASE NO. : CV-S-02-0095-KJD-LRL<br>CASE NO. : CV-S-02-0965-KJD-LRL<br><br><br><br><br><br><br><br><br><br><br>**ORDER** |

Presently before the Court is Plaintiff's Motion to Recuse (#277). The Court has also considered the Opposition (#285) and the Reply (#286). The Motion is not only untimely, it is unsupported by the record.

**No Partiality Has Been Shown**

Plaintiff's motion and declarations assert that "there was a decided leaning against [Plaintiff] in how the court ruled." (Rumph Decl. ¶ 6). "Defendants had their objections sustained almost all the time". (Hyson Decl. 1). The Declarations of Hinners and Damant are to similar effect. (Hinners Decl. 1; DaMant Decl. 1). Such statements are not supported by the transcript and are further evidence of the fact that members of the jury were not impartial. In

fact, the record demonstrates that among the hundreds of evidentiary rulings, both sides received very nearly the same number of rulings in their favor.

The Court has reviewed in its entirety the record of evidentiary rulings in this matter, consisting of pretrial rulings and over two thousand pages of trial transcript. Noted are the party making the motion or objection, the nature of the motion or objection, the ruling on the motion or objection, and in whose favor the ruling was made. Rulings favoring Plaintiff total approximately one hundred ninety. Rulings favoring Defendants total approximately one hundred ninety three.[1] Plaintiff's record would have been much better had he not utilized obstructive tactics in responding to adverse evidence. Such tactics included the assertion of serial and unfounded objections. For example, Plaintiff's counsel objected to almost every question being asked of Jane Grove, a witness adverse to Plaintiff. (Trial Tr. 203-205, November 10, 2005.) There were many other instances of obstructive conduct on the part of counsel for Plaintiff, and repeated instances of unfounded objections, some involving cross-examination of Plaintiff's own witnesses. For example, Plaintiff's witness, Dr. Bradley Walker, was being cross-examined by Defendant U.M.C. (Trial Tr. 3-11, November 7, 2005.) Walker was asked whether he told Dr. Anthony, "you're dealing with Rambo", referring to his impression of Plaintiff and her response to the perceived negative evaluation by Anthony. Plaintiff's counsel objected to this question on grounds of hearsay. With the declarant, Dr. Walker, present in court and testifying, it was clearly not a valid hearsay objection. Later, counsel objected, without any basis, to Walker testifying what Plaintiff said in response to her evaluation by Dr. Anthony. According to Walker, Plaintiff stated "she was going to cut off his [Anthony's] F'ing balls". (Trial Tr. 54, November 7, 2005.)

**The Court Showed Deference to Plaintiff and Counsel Throughout the Proceedings**

The same portion of the record undercuts any suggestion that the Court was unfair or insensitive to evidence extremely prejudicial to Plaintiff. On November 7, 2005, counsel for

---

[1] The numbers cannot be precisely calculated, because, on occasion, the outcome of an objection or a ruling on the objection is ambiguous. For example, in a few instances, the Court sustained an objection yet accepted the evidence for a limited purpose. This could be seen as favoring one side or the other depending on either parties' perspective. However, the record as a whole reflects a pattern of fairness to both sides.

Plaintiff requested and received a conference outside the presence of the jury to discuss a rumor that U.M.C. had a witness who would testify that Plaintiff, Raafat Mohamadkhani, said "America got what it deserved on September 11, 2001".  (Trial Tr. 3.)  After receiving assurances that Defendant did not plan to elicit such evidence from witnesses, one of whom was later identified as Pamela Shriver (Trial Tr. 181, November 9, 2005), the presentation of evidence was allowed to continue.  Plaintiff also requested exclusion of her educational record which contained comments on Plaintiff's need for one-on-one supervision, her pattern of illnesses during final examinations in medical school, and negative comments from one of her professors with whom she had conflicts.  This evidence also was not offered by Defendants during the course of the trial, likely because they realized the Court would not allow it.

**The Court's Hearsay Rulings Were Correct**

Plaintiff also alleges that the Court's hearsay rulings show bias.  Although Plaintiff's counsel complains that the Court permitted defense hearsay not for the truth of the matter asserted, he conveniently ignores the fact that he also was permitted to introduce hearsay evidence not for the truth of the matter asserted.  The instances where he was not allowed to do so involved the ultimate issue in the case, that is whether Dr. Anthony had made discriminatory remarks.  For example, Plaintiff repeatedly attempted to elicit testimony from witnesses of what they had by been told by others concerning discriminatory remarks allegedly made by Defendant Anthony.  The Court made it clear from the beginning of the case that prejudicial hearsay evidence would not be permitted on the ultimate factual issue to be decided by the jury.  However, in other instances, when hearsay evidence was relevant for another purpose, it was received from both Plaintiff and Defendant.  For example, Plaintiff was allowed to introduce hearsay evidence, not for the truth of the matter asserted, but to show notice.  (Trial Tr. 113-14, November 2, 2005; Trial Tr. 131-32, November 10, 2005.)   Such instances are appropriate, because evidence admitted not to establish truth of the matter asserted is not hearsay.  See Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004).

In instances where hearsay evidence dealt with the core issue in the case or where there was no valid alternative use, it was not allowed from either side because the prejudicial effect

outweighed the probative value. This is demonstrated by Plaintiff's attempt to introduce hearsay testimony from LaQuinta Hall who had reportedly heard from others the reason for Anthony's alleged actions. (Trial Tr. 56-7, October 31, 2005.) Because the hearsay evidence dealt directly on the most important issue in the case, alleged discriminatory actions by Anthony, it was not allowed. Plaintiff facetiously asserted that it was being offered, not for the truth of the matter asserted, but as "background". However, merely labeling hearsay declarations as "not for the truth of the matter asserted" or "background" does not automatically convert them to admissible evidence or overcome the prejudicial effect. In the case of Ms. Hall, the Court, consistent with previous and subsequent rulings on similar evidence, ruled that testimony from the original declarant would be required. Particularly, since the original declarants were not shown to be unavailable and many were expected to testify later in the trial, there was no need for such second-hand or hearsay evidence. See Old Chief v. United States, 519 U.S. 172, 182-83 (1997)("If an [evidentiary] alternative [to the offered hearsay] were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.")

Plaintiff falsely states that there is no legal basis for making a distinction between admission of hearsay evidence on the ultimate fact to be determined by the jury and matters of lesser importance. The U.S. Supreme Court, in the case of Dutton v. Evans, 400 U.S. 74, 87 (1970), discusses the distinction between hearsay evidence of peripheral significance and hearsay evidence of 'crucial' or 'devastating' impact. The district court has a duty to balance the need for and the reliability of hearsay evidence against the right of a defendant to cross-examine the witnesses against him. See United States v. Sine, 2007 WL 2034041 (9th Cir. July 17, 2007). The Court is required to compare evidentiary alternatives to calculate the "probative value of an item of evidence". See id., quoting Old Chief, 519 U.S. at 184. Furthermore, where, as in this case, the facts are determined by a jury, the risk of prejudice from hearsay is higher. See Calmat, 364 F.3d at 1125. The foregoing cases and innumerable others should put to rest Plaintiff's assertion that there is no authority for the Court to consider the probative value and

trustworthiness of the evidence, the availability of other witnesses, and any of the other factors that go into a decision of whether to admit evidence.

**The Court was Helpful to Plaintiff and Counsel**

Plaintiff's counsel also mis-characterizes the tenor of the Court as hostile and unhelpful to Plaintiff. He conveniently ignores the interruption of trial to permit him to attend an administrative law hearing in California. (Trial Tr. 32, November 1, 2005.) Plaintiff's counsel also conveniently ignores that immediately following the verdict, the Court gave him additional time to respond to Plaintiff's motion for directed verdict. (Trial Tr. 9, November 15, 2005.) In an even more telling omission, he fails to acknowledge that approximately two weeks before he filed the instant motion to recuse, he requested and received permission from this Court to appear telephonically for purposes of a motion hearing, thus saving him travel from Bakersfield, California, to Las Vegas, Nevada, on April 18, 2007. Counsel is well aware that permission to appear telephonically is not a right and that it is within the sole discretion of the Court to permit such an appearance.

At another point in the trial, Plaintiff's counsel was accommodated by delaying testimony from a defense witness he was not prepared to cross-examine. (Trial Tr. 66, November 10, 2005.) On another occasion, the Court supplied the correct objection for Plaintiff's counsel when he could not think of it. (Trial Tr. 107, November 9, 2005.) While Plaintiff was testifying on direct examination, the Court not only assisted Plaintiff in obtaining a cup of water, but had the clerk verify it was fresh. (Trial Tr. 10, November 1, 2005, afternoon.)

The record also confirms that at numerous points during the trial, the Court left its seat to assist Plaintiff and her witnesses in locating exhibits and in paging through the exhibit binders. Invariably, the Court warned each of Plaintiff's witnesses concerning the dangers of inconspicuous steps near the witness chair. The record also reflects bantering between the Court and counsel for Plaintiff.

Of course, the transcript does not reflect whether the Court is smiling. However, since Plaintiff has shown a willingness to actually misrepresent aspects of the proceedings which are

subject to verification from the trial record, it is not surprising there would be a willingness to misrepresent matters that cannot be verified from the record.

**Counsel for Plaintiff was Unprepared**

Plaintiff's counsel repeatedly asserts in his Motion to Recuse and Declaration that the Court was "angry" with him and was "personally upset with [him]".  However, counsel's opinion of the Court's attitude fails to disclose reasons why the Court may have legitimately grown frustrated.  From the beginning of the trial, Plaintiff's counsel insisted that he had not received certain exhibits which Defendants proposed to admit.  He used up much Court time and delayed the commencement of trial in pursuit of objections to those items.  Later, after being confronted with evidence he had received the documents, he apologized, however immediately asserted that Defendants had waived the *Faragher/Ellerth* defense. (Trial Tr. 197, November 2, 2005.)  After being shown it was included in Defendants' Answer as an Affirmative Defense, counsel was again forced to retract.  The Court did not comment on this major blunder.

Overall, Plaintiff's counsel was not well prepared. For example, in cross-examining witnesses, he often claimed the witness had contradicted their own deposition testimony, only to have it pointed out that he had read it wrong. (Trial Tr. 87, November 8, 2005; Trial Tr. 125, November 10, 2005.)  There were also occasions where the client needed to interrupt and correct counsel in the presentation of her case. (Trial Tr. 113, November 7, 2005.)  At other times Plaintiff was reading from her notes and suggesting to counsel the next question he should ask. (Trial Tr. 26-61, November 1, 2005, afternoon.)  At one point, Plaintiff inquired whether she could volunteer information not in response to a question. After being instructed by the Court she could not, Plaintiff's counsel asked her "anything you would like to add?" (Trial Tr. 42-43, November 2, 2005.)

**Counsel Was Treated Fairly and with All Due Respect**

It is true that the Court, after discovering counsel's misrepresentations concerning the holding and import of the McDonough Power case as it applied to the issue of Juror Derige, did point out that both sides had misrepresented the holdings of various cases.  This was not an afterthought to protect the record as imagined by Plaintiff's counsel.  The Court had already ruled

6

on Defendant's motions in limine and reviewed Defendants' proposed jury instructions, both of which contained numerous citations to cases that were not applicable or did not stand for the principles asserted.  Considering his earlier misrepresentations regarding discovery lapses and the *Faragher/Ellerth* affirmative defense, it was certainly appropriate to point out to counsel that he had misrepresented the holding of McDonough Power Equip, Inc. v. Greenwood, 464 U.S. 548 (1984), a critical case, at a critical juncture.  Here, counsel waited for the Court to read the case and confront him with the holding which had nothing to do with the Derige procedural posture or facts.

      The record reflects no berating of Plaintiff's counsel.  Being overly-sensitive to any criticism of his performance, he may have viewed it as such.  His complaint that the Court spoke in a raised voice is not indicative of anything other than counsel's own oft-repeated reminders to the Court and witnesses that he is "hard of hearing".  Plaintiff's counsel ignores his own vociferous trial conduct in confronting adverse witnesses.  He was constantly over-talking witnesses, not giving them a chance to complete answers he did not like. (Trial Tr. 114-5, November 9, 2005.) The Court not only overlooked these indiscretions but actually lectured a witness, Dr. Thompson, for arguing with counsel for Plaintiff.  (Trial Tr. 10, November 9, 2005.)

**The Juror Declarations Demonstrate Juror Bias**

      The import of the juror declarations is far beyond what Plaintiff intended.  As discussed above, the declarations demonstrate false memory resulting from partiality.  While both jurors declare that most of the Court's rulings favored Defendants, the record demonstrates nearly the same number of favorable rulings for both sides.  In addition to demonstrating an unfavorable mind-set toward Defendants and all of Defendants' witnesses, the declarations confirm the observations of the court in the order for new trial.  One or more of the jurors was making sounds of affirmation during the trial. (Hinners Decl. 1; Hyson Decl. 1)  However, contrary to the juror declarations, such sounds were associated only with witnesses for Plaintiff.  There would be no reason for a juror to affirm testimony of any of Defendants' witnesses if, as stated (Hinners Decl. 1; Hyson Decl. 1), none of the jurors believed the defense witnesses.  While Plaintiff argues that Juror Derige could have been dismissed with seven jurors remaining, that ignores the juror who

1    was making sounds and the two jurors whose bias has been revealed. Defendants were entitled
2    to eight fair and impartial jurors, not four. As pointed out in the order for new trial, the excessive
3    verdict itself is evidence that Defendants did not receive an impartial jury.

**Counsel for Plaintiff Demonstrated a Lack of Familiarity with Rules of Evidence**

5    Plaintiff's Motion to Recuse repeatedly argues that the Court demonstrated bias towards
6    Plaintiff in its evidentiary rulings. However, the Court was required to respond to objections
7    made by either party and Plaintiff's counsel's style often impeded the presentation of evidence
8    and the Court's response to objections. For example, counsel for Plaintiff repeatedly registered
9    objections by number rather than by content, i.e., "Objection, FRE 608". (Trial Tr. 84, October
10   31, 2005.) This is a practice not used by other lawyers practicing before the Court. It is not
11   helpful when a single rule of evidence can contain numerous grounds for objection. Many of the
12   Plaintiff's objections were simply ruses to distract from damaging testimony. (Trial Tr. 204-205,
13   November 10, 2005.)

14   At times, Plaintiff's counsel attempted to gain admission of prior consistent statements of
15   witnesses whose testimony had not yet been impeached. It is readily apparent from his trial
16   conduct and the motion to recuse that counsel understands neither the requirements for admitting
17   prior consistent statements nor what is cumulative evidence.

18   During the direct testimony of Nick Ritz, Plaintiff attempted to have admitted a prior
19   consistent statement by Dan Teach. Since the testimony of Teach had not been impeached to that
20   point in the trial, the Court correctly ruled that there was no dispute about the nickname of
21   "Hector" having been given to Dan Teach by Anthony. Accordingly, the Court did not permit
22   the witness to repeat the hearsay remarks just for the sake of getting them into the record a
23   second time. (Trial Tr. 26-30, November 3, 2005.) Prior consistent statements may be admitted
24   when offered to rebut an express or implied charge against the declarant of recent fabrication, or
25   improper influence or motive. Federal Rules of Evidence 801(d)(1). Anthony had not testified
26   but when he did, he did not deny that he had called Teach "Hector". Accordingly, the conditions
27   for admission were not met. The Court spent considerable time explaining this to Plaintiff's
28   counsel on more than one occasion, yet he never seemed to understand the requirements for

8

admission of prior consistent statements. At many times, however without sanction, counsel for Plaintiff continued to argue with the Court long after rulings had been made. (Trial Tr. 26-30, November 3, 2005.)

**The Motion to Recuse is Untimely**

Plaintiff incorrectly asserts that there is no time component applicable to a motion to recuse pursuant to 28 U.S.C. 455. While it is true that the statute itself does not contain a time component, the argument is misleading. Case law imposes a requirement of timeliness. For example, E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280 (9th Cir. 1992), held that the recusal issue was untimely raised for the first time in a motion for new trial following adverse judgment where the movant was aware of the ground for disqualification when the judge received the case. Here, Plaintiff and counsel claim that they noticed partiality "quickly" during the trial. They supposedly knew on November 14, 2005, that the Court was going to rule against them on post-trial motions. The Motion to Recuse was not filed until May 6, 2007, almost 18 months later. The order setting aside the jury verdict was entered some nine months before the filing of the Motion to Recuse. (Order, Doc. No. 254, September 13, 2006.) The order granting in part/denying in part Defendants' motion for summary judgment was entered more than five months before the Motion to Recuse. (Order, Doc. No. 262, December 4, 2006.)

The motion to recuse was not filed until approximately one month following the filing of Defendants' most recent motion for summary judgment which contains grounds that have not been addressed in previous orders. Defendant U.M.C. claims it has satisfied the *Faragher/Ellerth* defense criteria. Although counsel for Plaintiff vigorously argued during trial that the defense had not been asserted and was therefore waived, when confronted with Defendants' amended answer was forced to concede that he had been mistaken. (Trial Tr. 197, November 2, 2005.) Plaintiff's sole justification for not filing with the Equal Opportunity Board was the impression of Nick Ritz, based on his experience with Dan Teach, that she would not receive a fair shake. (Trial Tr. 56-7, November 14, 2005.) Mr. Ritz' impression was derived solely from the experience of Dan Teach. Mr. Teach testified that Mr. Ritz and he were informed that it was too late to file his complaint. (Deposition of Dan Teach, p. 29-30, 51-52.) That

experience had nothing to do with whether a complainant could have a fair and meaningful remedy on merits of a claim. Plaintiff's motion to recuse is not only untimely, it is an apparent subterfuge to distract from the merits of the pending motion for summary judgment.

**The Motion Is Filled with Half Truths and Deception**

Plaintiff claims that bias is evident in the fact that the Court did not go into the jury room to thank the jurors. As counsel is well aware, the Court thanked the jurors for their service at the end of the trial and then thanked them again. (Trial Tr. 7, November 15, 2005.) That the Court did not go into the jury room to thank the jurors a third time is not evidence of bias. It would be inappropriate for the Court to go into a jury room and engage in ex-parte communications with members of the jury following a trial in which there are concerns over juror conduct.

Further deception is present in the Declaration of [Plaintiff's Counsel] Randy Rumph, paragraph 4, wherein he accuses the Court of bias in not allowing into evidence, Nick Ritz' impression of why it would do no good to file a complaint with EOD. Ritz' impression was not only based on speculation, it was knowingly misleading speculation. His impression was based solely on his experience with the complaint of Dan Teach. Teach previously testified that the reason he did not pursue his EOD complaint was he was told the time had expired. However, as counsel for Plaintiff is well aware, Plaintiff herself was allowed to testify directly why she did not file with the EOD. Counsel for Plaintiff misleadingly suggests that the reason he did not get the evidence through Ritz was because of the Court's anger with him. Counsel for Plaintiff demonstrates his practice of telling half-truths in failing to disclose that this evidence was introduced through his own client. (Trial Tr. 56-57, November 14, 2005.)

Plaintiff's Declaration also contains misrepresentations. For example, in paragraph 9 of her declaration, she quotes a portion of a witness's testimony and states that she is shocked to read that the court disbelieved the testimony. In doing so, she ignores contradictory statements from the witness's deposition and fails to recognize testimony demonstrating bias on the part of the witness, Brad Walker. Other witnesses testified that Brad Walker, described in Plaintiff's Declaration as a religious man, obstructed investigation of patient complaints, instructed union members not to answer (Trial Tr. 89, November 10, 2005), and engaged in outbursts during

10

arbitration that were sanctioned with an attorney's fee award. (Trial Tr. 116, November 10, 2005.) He engaged in yelling and screaming and was consistently late for meetings, (Trial Tr. 98-100, November 10, 2005.) It is this same witness who disingenuously claimed he could not tell the difference between "We haven't been served on the EEOC complaint yet so there can't be retaliation" and " We are gonna harass Dr. Khani and retaliate against her until she files an EEOC complaint". (Trial Tr. 78-80, November 7, 2005.)

**Conclusion**

Plaintiff's motion to recuse is not only untimely, it is filled with half-truths and material misrepresentation. The supporting declarations are disingenuous. Several are typed in the same style and font and, at many points, utilize identical phraseology. For example, the Declarations of Hinners and Hyson contain the identical statement: "Also, Judge Dawson was always pleasant and smiling with defense counsel but he acted just the opposite with Plaintiff's counsel". Plaintiff's failure to disclose Damant's reason for attending the trial and her relationship, professional or personal, to Plaintiff or Plaintiff's counsel calls her objectivity into question. To suggest she was a neutral observer ("not a party or litigant"), is not credible given the fact that her recollection is contradicted by the record.

Beginning with the reference on the first page to "Judge Ken (sic) Dawson" and continuing to the last page where counsel speculates on the meaning of an alleged "look that said", the motion is speculative and conclusory. The motion makes numerous claims that are not only unsupported, but actually contradicted, by the record. Further, Plaintiff misstates or ignores facts contrary to her position. While counsel for Plaintiff complains about being called to account for misstating the holding of one case, he ignores his many other misrepresentations which, though deserving of rebuke, were not pointed out. At numerous points in the motion, Plaintiff speculates and conjectures what was in the minds of others. The motion is filled with hearsay and inadmissible statements. The assertion in the motion that there are other unidentified individuals who agree with Plaintiff demonstrates no legitimacy. Plaintiff's Motion to Recuse is untimely and fails to demonstrate that the Court's demeanor and evidentiary rulings would cause

a reasonable person to conclude that the Court's impartiality might reasonably be questioned. See <u>F.J. Hanshaw Enter., Inc. v. Emerald River Dev., Inc.</u>, 244 F.3d 1128, 1144 (9th Cir. 2001).

Accordingly, the Motion to Recuse (#277) is without merit and **DENIED**.

DATED this 10th day of August 2007.

_____
Kent J. Dawson
United States District Judge